**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

TALEAH GRAY TURNER, individually and on
behalf of all others similarly situated,

   *Plaintiff*,

vs.

FLEXIBLE FINANCE INC. d/b/a FLEX,

   *Defendant*.

_____/

**CLASS ACTION**

**Case No.**

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

1.　　Plaintiff, Taleah Gray Turner ("Plaintiff"), brings this action against Defendant, Flexible Finance Inc. d/b/a Flex ("Defendant"), to secure redress for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

## NATURE OF THE ACTION

2.　　This is a putative class action under 47 U.S.C. § 227 et seq., the Telephone Consumer Protection Act ("TCPA").

3.　　This case arises from Defendant's transmission of multiple unauthorized text messages to cellular telephones, without regard to consumers' consent or privacy rights, even after consumers opt out from Defendant's messages.

4.　　Defendant is a rent-splitting and bill payment platform engaged in providing financial technology services to consumers, across the United States.

5.      To promote its services, Defendant engages in aggressive unsolicited telemarketing to consumers with no regard for consumers' rights under the TCPA, even after customers opt out from Defendant's messages.

6.      Through this action, Plaintiff seeks injunctive relief to halt Defendant's illegal conduct, which has resulted in the invasion of privacy, harassment, aggravation, and disruption of the daily life of thousands of individuals. Plaintiff also seeks statutory damages on behalf of herself and members of the class, and any other available legal or equitable remedies.

## JURISDICTION AND VENUE

7.      Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute. Jurisdiction is also proper under 28 U.S.C. § 1332 as the amount in controversy exceeds the sum of $75,000. Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiff alleges a class, which will result in at least one class member belonging to a different state than that of Defendant. Plaintiff seeks up to $1,500.00 (one-thousand-five-hundred dollars) in damages for each call in violation of the TCPA, which, when aggregated among a proposed class numbering in the tens of thousands, or more, exceeds the $5,000,000.00 (five-million dollars) threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA"). Therefore, both the elements of diversity jurisdiction and CAFA jurisdiction are present.

8.      Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant is headquartered in this District, Defendant is deemed to reside in any judicial district in which it is subject to the court's personal jurisdiction, and because Defendant provides and markets its services from within this District thereby establishing sufficient contacts to subject it to personal jurisdiction. Further, Defendant's tortious conduct against Plaintiff occurred from within the Southern District of New York and, on information and belief, Defendant has sent the same messages complained of by Plaintiff to other individuals from within this judicial district, such that some of Defendant's

acts in making such calls have occurred from within this district, subjecting Defendant to jurisdiction in the Southern District of New York.

## PARTIES

9.      Plaintiff is a natural person who, at all times relevant to this action, was a resident of St. Louis County, Missouri.

10.      Plaintiff is, and at all times relevant hereto was, an individual and the sole subscriber of the residential telephone number ending in 8242 (the "8242 Number") that received Defendant's text message solicitations.

11.      Defendant principal place of business is at 300 Park Avenue South, 14th Floor, New York, Ny, United States, 10010.

12.      Defendant directs, markets, and provides its business activities throughout the United States, including the State of New York.

13.      Unless otherwise indicated, the use of Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, vendors, and insurers of Defendant.

## FACTUAL ALLEGATIONS

14.      Beginning at least in March 2025, Defendant sent or caused to be sent multiple telemarketing text messages to Plaintiff's 8242 Number, from Defendant's short code 58397.

15.      Defendant sent telemarketing text messages to Plaintiff's 8242 Number on or about the following dates: March 1, 2026; March 13, 2026; March 27, 2026; March 31, 2026; April 2, 2026; April 14, 2026; April 27, 2026; April 30, 2026; May 2, 2026; May 15, 2026; and May 27, 2026. As shown below:





16.     On or about May 27, 2025, Plaintiff responded to Defendant's short code 58397 with the message "Stop," using clear and unambiguous opt-out language in an attempt to opt out of any further text message communications with Defendant, as shown below:



17.    Within seconds after Plaintiff sent the opt-out request, Defendant responded with an automated text message, acknowledging Plaintiff's explicit request to opt out from further communication with Defendant and confirming: "Flex, you have successfully been unsubscribed. You will not receive

any more messages from this number. Reply START to resubscribe. Reply HELP for help or help@getflex.com. Msg&Data Rates may apply." (As shown above).

18.    Despite Plaintiff's unequivocal opt-out request on May 27, 2025, and Defendant's own confirmation that Plaintiff had "successfully been unsubscribed" and would "not receive any more messages from this number," Defendant ignored Plaintiff's opt-out request and deliberately continued to send Plaintiff unwanted telemarketing text messages on or about May 29, 2025, (As shown above).

19.    On or about May 29, 2025, after receiving yet another unwanted text message from Defendant, Plaintiff sent a second "Stop" message, again using clear and unambiguous opt-out language, in a further attempt to stop Defendant's communications (As shown above).

20.    This pattern demonstrates Defendant's willful and knowing disregard for consumer protection laws and its deliberate choice to ignore Plaintiff's wishes.

21.    This pattern of violations demonstrates Defendant's systematic failure to maintain functional internal do-not-call procedures and its deliberate choice to ignore consumer opt-out requests.

22.    Defendant has the capability of immediately complying with Plaintiff's opt-out request.

23.    As demonstrated by the above facts, Defendant does not honor reasonable consumer requests to opt out of text message solicitations. Indeed, Plaintiff attempted to opt out of Defendant's text message solicitations by telling Defendant "Stop" but Defendant continued to text message Plaintiff, intentionally disregarding Plaintiff's instructions in order to solicit the sale of its services to Plaintiff.

24.    Defendant's refusal to honor Plaintiff's opt-out requests demonstrates that Defendant has not instituted procedures for maintaining a list of persons who request not to receive text messages from Defendant.

25.    Defendant's refusal to honor Plaintiff's opt-out requests demonstrates that Defendant does not have a written policy, available upon demand, for maintaining a do-not-call list.

26.     Defendant failed to place Plaintiff on an internal do-not-call list after Plaintiff's "Stop" opt-out instruction.

27.     Defendant's refusal to honor Plaintiff's opt-out requests demonstrates that Defendant does not provide training to its personnel engaged in telemarketing on the use and existence of a do-not-call list.

28.     Defendant's refusal to honor Plaintiff's opt-out requests demonstrates that Defendant does not maintain an internal do-not-call list.

29.     Defendant did not maintain the required procedures for handling and processing opt-out requests prior to the initiation of the violative text messages it sent to Plaintiff, as reflected by the fact that Plaintiff made a clear opt-out request with written confirmation, yet her request was ignored by Defendant and its employees, and Defendant continued to send text messages.

30.     These facts strongly suggest that Defendant fails to ensure that requests by Plaintiff and the Class members to opt out of future communications are honored within a reasonable time.

31.     Indeed, Plaintiff's and the Class members' opt-out requests were not honored within a reasonable time from when the opt-out requests were made.

32.     Defendant's text messages were transmitted to Plaintiff's residential cellular telephone, and within the time frame relevant to this action.

33.     Defendant's text messages constitute telemarketing because they encouraged the future purchase or investment in property, goods, or services, i.e., promoting Defendant's rent-splitting and bill payment services.

34.     The information contained in the text messages advertises Defendant's various services and promotions, which Defendant sends to promote its business.

35.     Upon information and belief, Defendant does not have a written policy for maintaining an internal do-not-call list pursuant to 47 C.F.R. § 64.1200(d)(1).

36. Upon information and belief, Defendant does not inform and train its personnel engaged in telemarketing in the existence and the use of any internal do-not-call list pursuant to 47 C.F.R. § 64.1200(d)(2).

37. Defendant sent the subject texts from within this judicial district and, therefore, Defendant's violations of the TCPA occurred from within this district. Upon information and belief, Defendant caused other text messages to be sent to individuals residing within this judicial district.

38. Defendant's texts were not made for an emergency purpose or to collect on a debt pursuant to 47 U.S.C. § 227(b)(1)(B).

39. To the extent that Defendant ever had any consent to contact Plaintiff for marketing purposes, that consent was expressly revoked on May 27, 2025, when Plaintiff responded to Defendant with the message "Stop" and received written confirmation: "Flex, you have successfully been unsubscribed. You will not receive any more messages from this number. Reply START to resubscribe. Reply HELP for help or help@getflex.com. Msg&Data Rates may apply."

40. Plaintiff is the subscriber and sole user of the 8242 Number and is financially responsible for phone service to the 8242 Number.

41. Plaintiff's 8242 Number is her residential number which she uses for personal purposes.

42. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

43. The text messages originated from short code telephone number 58397, a number which upon information and belief is owned and operated by Defendant or on behalf of Defendant.

44.    Upon information and belief, Defendant has access to outbound transmission reports for all text messages sent advertising/promoting its services and goods. These reports show the dates, times, target telephone numbers, and content of each message sent to Plaintiff and the Class members. Defendant also has access to text message logs showing Plaintiff's and the Class members' inbound opt-out requests.

45.    Defendant's unwanted telemarketing text messages caused Plaintiff actual harm, including invasion of her privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion. Defendant's text messages also inconvenienced Plaintiff and caused disruption to her daily life.

46.    Defendant's unwanted telemarketing text messages caused Plaintiff actual harm. Specifically, Plaintiff estimates that she has wasted fifteen to thirty seconds reviewing each of Defendant's unwanted messages. Each time, Plaintiff had to stop what she was doing to either retrieve her phone and/or look down at the phone to review the message.

47.    Next, Plaintiff wasted approximately fifteen minutes locating and retaining counsel for this case in order to stop Defendant's unwanted text messages. In all, Defendant's violations of the TCPA caused Plaintiff to waste at least fifteen minutes of her time in addressing and attempting to stop Defendant's solicitations.

## CLASS ALLEGATIONS

### PROPOSED CLASS

48.    Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of herself and all others similarly situated.

49.    Plaintiff brings this case on behalf of the following "Class" defined as follows:

> **National Internal Do Not Call Class: From four years before the filing of the Complaint, all persons in the United States who (1) were sent more than one text message by or on behalf of Defendant within any 12-month period; (2) regarding Defendant's goods or**

**services, to said person's cellular telephone number; and (3) while Defendant did not maintain the required procedures under 47 C.F.R. § 64.1200(d) for maintaining a list of persons who request not to receive such calls.**

50.     Defendant and its employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class but believes the Class members number in the several thousands, if not more.

51.     Also excluded from the Class are persons who, after making a request to Defendant to not receive future text messages, subsequently affirmatively opted in to receive text messages from Defendant.

## NUMEROSITY

52.     Upon information and belief, Defendant has placed text messages to telephone numbers belonging to thousands of consumers listed throughout the United States without their prior express written consent and/or after they had requested to opt out. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

53.     The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's text message records.

## COMMON QUESTIONS OF LAW AND FACT

54.     There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are:

[1] Whether Defendant initiated text message solicitations to Plaintiff and the Class members;

[2] Whether Defendant violated 47 C.F.R. § 64.1200(d);

[3] Whether Defendant adhered to requests by class members to stop sending text messages to their telephone numbers;

[4] Whether Defendant keeps records of text recipients who revoked consent to receive texts;

[5] Whether Defendant has any written policies for maintaining an internal do-not-call list;

[6] Whether Defendant's conduct was knowing and willful; and

[7] Whether Defendant is liable for damages, and the amount of such damages.

55.     The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendant routinely transmits text message solicitations to consumers after they had requested to be opted out, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

## TYPICALITY

56.     Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

## PROTECTING THE INTERESTS OF THE CLASS MEMBERS

57.     Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

## SUPERIORITY

58.     A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

59.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

**COUNT I**
**VIOLATION OF 47 U.S.C. § 227(c)(2)**
**(Individually and on Behalf of the National Internal Do Not Call Class)**

60.     Plaintiff re-alleges and incorporates paragraphs 1 through 59 as if fully set forth herein.

61.     The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

62.     Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet certain minimum standards, including:

> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request . . . ."

63.     Under 47 C.F.R. § 64.1200(e), the rules set forth in 47 C.F.R. § 64.1200(d) are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers:

> (e) The rules set forth in paragraph (c) and (d) of this section are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, "Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991."

47 C.F.R. § 64.1200(e).

64.     Plaintiff and the National Internal Do Not Call Class members made requests to Defendant not to receive telemarketing messages from Defendant.

65.     Defendant failed to honor Plaintiff and the National Internal Do Not Call Class members' requests.

66.     Upon information and belief, Defendant has not instituted procedures for maintaining a list of persons who request not to receive telemarketing messages made by or on behalf of Defendant, pursuant to 47 C.F.R. § 64.1200(d).

67.     Because Plaintiff and the National Internal Do Not Call Class members received more than one text message in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200(d), as described above, Defendant violated 47 U.S.C. § 227(c)(5).

68.     As a result of Defendant's violations of 47 U.S.C. § 227(c)(5), Plaintiff and the National Internal Do Not Call Class members are entitled to an award of $500.00 in statutory damages, for each and every negligent violation, pursuant to 47 U.S.C. § 227(c)(5).

69.     As a result of Defendant's violations of 47 U.S.C. § 227(c)(5), Plaintiff and the National Internal Do Not Call Class members are entitled to an award of $1,500.00 in statutory damages, for each and every knowing and/or willful violation, pursuant to 47 U.S.C. § 227(c)(5).

70.     Plaintiff and the National Internal Do Not Call Class members also suffered damages in the form of invasion of privacy.

71.    Plaintiff and the National Internal Do Not Call Class members are also entitled to and seek injunctive relief prohibiting Defendant's illegal conduct in the future, pursuant to 47 U.S.C. § 227(c)(5).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Class as defined above, and appointing Plaintiff as the representative of the Class and Plaintiff's counsel as Class Counsel;

b) An award of statutory damages for Plaintiff and each member of the Class;

c) An order declaring that Defendant's actions, set out above, violate the TCPA;

d) An injunction requiring Defendant to cease all text message solicitations made without express written consent, and to otherwise protect the interests of the Class;

e) Such further and other relief as the Court deems necessary.

## JURY DEMAND

Plaintiff, individually and on behalf of the Class, hereby demands a trial by jury.

## DOCUMENT PRESERVATION DEMAND

Plaintiff demands that Defendant take affirmative steps to preserve all records, lists, electronic databases or other itemization of telephone numbers associated with the communications or transmittal of the allegations herein, including all records, lists, electronic databases or other itemizations in the possession of any vendors, individuals, and/or companies contracted, hired, or directed by Defendant to assist in sending the alleged communications.

Dated: July 17, 2026

Respectfully Submitted,

**Shamis & Gentile, P.A.**
*/s/ Leanna Loginov*
Leanna Loginov, Esq.

New York Bar # 5894753
lloginov@shamisgentile.com
14 NE 1st Ave., Suite 705
Miami, Florida 33132
Telephone: 305-479-2299

*Counsel for Plaintiff and Proposed Class.*